UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NILDA RODRIGUEZ,

    Plaintiff,

v.     Case No:   8:13-cv-674-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on March 14, 2014. Plaintiff, Nilda Rodriguez seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **Affirmed** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.   The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On May 28, 2009, Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income asserting a disability onset date of January 1, 2009. (Tr. p. 149-155,156-159). Plaintiff's applications were denied initially on September 30, 2009, and denied upon reconsideration on April 21, 2010. (Tr. p. 80-83). A hearing was held before Administrative Law Richard Ouellette ("ALJ") on July 18, 2011. (Tr. p. 33-71). The ALJ issued an unfavorable decision on August 23, 2011. (Tr. p. 13-26). On January 12, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-6). The Plaintiff filed a Complaint (Doc. 1) in the United States District Court and on March 14, 2013. This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 17).

### C. Summary of the ALJ's Decision[1]

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. Oct. 29, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ

---

[1] Plaintiff's counsel states that "[f]or brevity and economy, the statements of the testimony and of the documentary evidence as set forth In the ALJ's decision (T. 10-32) are accepted by Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, excepted, or expanded upon, below." (Doc. 21, p. 3). Therefore, the Court will also adopt the ALJ's statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (Tr. p. 13-26) unless excepted in this Opinion and Order.

must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. p. 15). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: hypertension; diabetes mellitus; osteomyelitis; Hepatitis C; obesity; and substance (alcohol) abuse, in early remission by self-report (20 C.F.R. §§404.1520(c) and 416.920(c)). (Tr. p. 16). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 17).

At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") as follows:

> to lift and/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk intermittently (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hour in an eight-hour workday; and push/pull with arm or leg controls (as shown for lift/carry) is unlimited. The claimant has a frequent limitation for prolonged standing but is capable of standing intermittently during the workday for a six-hour period with an occupational limitation for bending and stooping. She is capable of performing routine work tasks that do not require fine manipulation in an air-conditioned environment.

(Tr. p. 17). The ALJ elicited the testimony of vocational expert witness, Joyce Ryan. The ALJ determined that Plaintiff was capable of returning to her past relevant work as a buffet server, and that this work is not precluded by Plaintiff's residual functional capacity. (Tr. p. 24).

In the alternative, the ALJ made step five findings as well. The ALJ determined that at 44 years of age, Plaintiff was considered a younger individual, with at least a high school education. The ALJ determined that Plaintiff was capable of performing light work with limitations. (Tr. p. 24), The ALJ consulted the vocational expert to determine the extent to which the limitations listed by the ALJ eroded the unskilled light occupational base. (Tr. p. 25). The vocational expert determined that Plaintiff could perform the job of Gate Guard (DOT 372.667-030) which is light exertion with an SVP of 3; School Bus Monitor (DOT 372.667-042) which is light exertion with SVP of 3; and Ride/Arcade Attendant (DOT 342.667-014) which is light exertion with a SVP of 3. (Tr. p. 25). The ALJ concluded that Plaintiff has not been under a disability from January 1, 2009 through the date of the decision. (Tr. p. 26).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises one issue on appeal. As stated by Plaintiff, it is that the decision of the Defendant was in error in that the Appeals Council erred by failing to find that the new evidence submitted to it showed that the Plaintiff had the condition of Sleep Apnea and symptoms of excessive daytime somnolence prior to the issuance of the unfavorable administrative law judge decision. Plaintiff refers to two reports submitted to the Appeals Council, one dated January 9, 2012 relating to a sleep study (Tr. p. 977-978); and, one dated May 30, 2012 from Tampa Bay Pulmonary Associates stating that Plaintiff had symptoms of excessive daytime somnolence and significant snoring (Tr. p. 1183). Plaintiff argues that this evidence which was not submitted to the ALJ but was submitted to the Appeals Council has a reasonable likelihood of showing that Plaintiff suffered from sleep apnea prior to the ALJ's decision, and that if the ALJ had the results of the sleep study, there is a "reasonable probability that the decision would have been different." (Doc. 21, p. 6).

The Appeals council "found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." (Tr. p. 1). The

additional medical evidence submitted to the Appeals Council was as follows: Treatment Records from Dr. Castillo; Medical Records – Central Tampa Hematology and Oncology; Treatment Records from Orthopaedic Medical Group; Treatment Records from Dr. Kaplan; Treatment Records from Tampa General Medical Group; Treatment Records from Dr. Kamat; Treatment Records from Dr. Delgado; Treatment Records from DI Westchase Sports & Medicine; Medical Records from Miscellaneous; and Medical Records from Tampa Bay Pulmonary Associates. (Tr. p. 5, 912-1184). Plaintiff argues that the records from Tampa General Medical Group of the Polysomnography on January 3, 2012 (Tr. p. 977-978) indicating sleep apnea; and, the records from Tampa Bay Pulmonary Associates, P.A. dated May 10, 2012, indicating "[e]xcessive daytime somnolence" are new and material evidence showing that there is a reasonable possibility that this new evidence would change the ALJ's decision.

A claimant is generally permitted to present new evidence at each state of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The ALJ entered his Decision on August 21, 2011. The Polysomnography or sleep study occurred on January 3, 2012, and the visit to Tampa Bay Pulmonary Associates occurred on May

10, 2012, approximately four and nine months after the ALJ's Decision. The ALJ considered Plaintiff's complaint of fatigue in his opinion. He states that Plaintiff "has mentioned anemia with some fatigue and depression at which time, she started crying a bit." (Tr. p. 18).

The Polysomnography conducted by Stephen M. Kreitzer, M.D. occurred on January 3, 2012 and the impression was "obstructive sleep apnea with desaturations, arousal, and disordered breathing events. Sleep fragmentation with reduced REM sleep secondary to obstructive sleep apnea. A marked hypoxemia is suggestive of primary alveolar hypoventilation." (Tr. p. 977-78). However, Dr. Kreitzer also noted that "further diagnosis is suggested." (Tr. p. 978). Dr. Kreitzer recommended weight loss; ruling out hypothyroidism; improving sleep hygiene by removing caffeine, nicotine or alcohol; limiting driving until adequately treated; completing ENT evaluation for possible upper airway resistance; educating Plaintiff as to the physiology of sleep; conducting a pulmonary evaluation for etiology of alveolar hypoventilation; and returning to sleep lab for a trial of continuous positive airway pressure breathing. (Tr. p. 978).

Jerges J. Cardona, M.D. from Tampa Bay Pulmonary Associates saw Plaintiff on May 10, 2012, for complaints of significant snoring and excessive daytime somnolence. (Tr. p. 1183). Dr. Cardona did not have the report from the sleep study done at Tampa General Hospital, but Plaintiff told him that she had sleep apnea. (Tr. p. 1183). Plaintiff did not start the CPAP and had not followed-up with her primary care physician. (Tr. p. 183). Dr. Cardona did not have any medical records regarding her sleep issues to review. (Tr. p. 1183). Plaintiff was awake for examination and had no significant distress. (Tr. p. 1184). Dr. Cardona's impress of "[e]xcessive daytime somnolence, possible underlying obstructive sleep apnea" comes solely from Plaintiff's subjective complaints as he has no medical records to support this impression other than Plaintiff's

Case 8:13-cv-00674-DNF Document 23 Filed 05/08/14 Page 8 of 10 PageID 1269

statements. (Tr. p. 1183-84). Dr. Cardona's plan was wait for the medical records relating to Plaintiff's sleep issues then to begin a titration study for a CPAP. (Tr. p. 1184).

The Commissioner does not argue that these records do not relate to the period of time on or before the date of the administrative law judge's decision. The ALJ mentioned that Plaintiff claimed that she suffered from fatigue, and Plaintiff testified at the hearing that she suffered from fatigue from either her anemia or hepatitis C which caused her to be tired, and to sleep for no reason. (Tr. p. 58-59). Plaintiff did complain of fatigue at the hearing, and the Court determines that the sleep study done after the ALJ's determination does relate back to a date prior to the ALJ's decision.

Even though the Court accepts that these records relate back, the Court does not find that they are material or would change the administrative outcome. The limitation of fatigue was considered by the ALJ in his Decision. Further, the sleep study dated January 3, 2012 only suggested a diagnosis of sleep apnea, and recommended further testing to rule out other possible diagnoses such as hypothyroidism. (Tr. p. 978). Dr. Kreitzer's only limitation was to limit driving until Plaintiff was adequately treated. (Tr. P. 978). Dr. Cardona's impression of excessive daytime somnolence is based totally upon Plaintiff's subjective complaints. Dr. Cardona did not have any of the medical records regarding Plaintiff's sleep issues, therefore, relied on Plaintiff's report of her daytime sleep problems. Dr. Cardona's records also show that Plaintiff waited from January 2012 to May 2012 to begin the process of obtaining a CPAP and having it adjusted for her. If Plaintiff was truly limited by her fatigue to the extent she describes, she failed to explain why she waited five months to obtain help for this limitation.

Plaintiff also included the records from Orlando J. Castillo, M.D. Plaintiff's self-reporting of daytime somnolence is contradicted by Dr. Castillo's treatment notes of June 25, 2012,

and October 10, 2012. These treatment records report a finding that Plaintiff has no fatigue. (Tr. p. 1100, 1103). The June report was only a month after Plaintiff saw Dr. Cardona and reported excessive daytime somnolence.

As the Commissioner argues repeatedly, the ALJ did not find Plaintiff to be credible for a number of reasons. Just as Plaintiff reported excessive somnolence in May 2012, and then no fatigue in June 2012, Plaintiff also had conflicting testimony before the ALJ. Plaintiff testified that she received unemployment compensation for the third quarter of 2009, yet also claims that her onset date for disability was January 1, 2009. (Tr. p. 16). The ALJ noted that while receiving unemployment compensation in Florida, a person must be available and suitable for work which means that Plaintiff presented herself as being capable and willing to work. (Tr. p. 16). Therefore, Plaintiff claimed that she was disabled for social security purposes, and at the same time, claimed that she was willing and able to work. Plaintiff testified that she lived with her mother at the beginning of the hearing, but later admitted that her mother lives in New Jersey. Plaintiff testified that her mother moved because she was unable to help care for her, however prior to her mother moving, Plaintiff did provide care to her. (Tr. p. 20-21). Plaintiff also failed to mention that in 2011 she was working part-time as a housekeeper for her aunt, and only admitted to this work when it was brought to Plaintiff's attention by the ALJ that Dr. Kaplan's treatment records in May 2011 showed Plaintiff complaining of injuring her toe "at work." (Tr. p. 22).

Although Plaintiff argues that there is a reasonable possibility that the possible diagnosis of sleep apnea would change the administrative outcome, a "diagnosis [ ] is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n. 6 (11th Cir. 2005)). The ALJ considered Plaintiff's fatigue in his decision. Plaintiff provided a sleep study which shows that

she has some sleep problems, and possibly sleep apnea. However, Plaintiff told Dr. Cardona that she has excessive daytime somnolence, but then reports a month later to Dr. Castillo that she has no fatigue. The Court agrees with the ALJ's assessment of Plaintiff's lack of credibility. These new records show a possible new diagnosis, however, the limitation of fatigue was considered by the ALJ in his Decision. The new medical evidence contained contradictory reports from Plaintiff as to her fatigue, and her credibility was in question from the contradictory statements she made during the hearing before the ALJ. Plaintiff also waited five months to begin the process of obtaining a CPAP and having it adjusted to her needs. Plaintiff has failed to show that a new diagnosis for the limitation of fatigue that was considered already by the ALJ would render the ALJ's Decision contrary to the weight of all of the evidence of record or that there is a reasonable possibility that the new evidence would change the administrative outcome.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is supported by substantial evidence and decided according to proper legal standards. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 8, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties